## TAYLOR GAS PRODUCER CO. v. WOOD.

(Circuit Court of Appeals, Third Circuit. September 15, 1903.)

No. 24.

1. CONTRACT BY CORPORATION—MODIFICATION BY PAROL—QUESTION FOR JURY.
   Plaintiff, a corporation, sued for royalties under a written contract by which it granted to defendant an exclusive license under a patent, and defendant agreed to pay royalties after three years on not less than a stated number of the patented machines annually. It was admitted that the contract was subsequently modified by parol, but whether the provision requiring the payment of minimum royalties had been abrogated was in dispute. It was shown, however, that plaintiff failed to protect defendant against infringers of the patent, and finally abandoned any attempt to do so, and that, in consequence, defendant had ceased to make the patented article; that he had never paid the stipulated minimum royalty, but had paid on the machines actually made by him, and that such payments had been known to plaintiff's directors and accepted without objection, and no further claim made until eight years after the first of such payments was due. *Held,* that the failure of plaintiff to maintain the validity of its patent and protect defendant as its licensee was sufficient consideration for the modification of the contract claimed by defendant, and that the evidence warranted the submission to the jury of the question whether such modification was in fact made.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 119 Fed. 966.

Alex Simpson, Jr., for plaintiff in error.

Joseph E. Fraley, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and BUFFINGTON, District Judge.

GRAY, Circuit Judge. The plaintiff below, who is plaintiff in error here, brought suit for the alleged infringement of a written contract between plaintiff and defendant, dated September 11, 1890. Under the terms of this contract as written, the plaintiff corporation, being the owner of certain letters patent of the United States and Canada, for improvements in gas producers, granted to the defendant "the exclusive license, right or privilege under the terms and conditions hereinafter expressed * * * to make, and vend to others to be used, gas producers or apparatus for making gas, containing or embodying the inventions described or contained or claimed in the hereinbefore recited several letters patent, or some of them, within and throughout the United States and Canada." In consideration of the grant of this license, the defendant covenanted to pay, from the date of the license and agreement, certain royalties during a period of three years, ending October 1, 1893, graded from $20 to $35, according to the size and capacity of the producers or apparatus to be manufactured. After the said 1st day of October, 1893, these royalties or license fees were to be from $25 to $50. In the third article of said agreement, it is provided as follows:

"Third: That furthermore in consideration of the license aforesaid, the said Walter Wood, party hereto of the second part, hereby agrees to make and sell or cause or procure to be made and sold to others to be used after

the third and during each subsequent year of this license and agreement, not less than one hundred gas producers or apparatus for making gas containing or embodying the inventions set forth or described and claimed in the said hereinbefore recited several letters patent or account for and pay royalty to the said corporation, the Taylor Gas Producer Company, party hereto of the first part, in each and every year after the third from the date of this license and agreement, a royalty or license fees on not less than one hundred gas producers or apparatus for making gas containing or embodying the inventions set forth or described and claimed in the hereinbefore recited several letters patent or some of them, whether that number of gas producers or apparatus for making gas or not has or have been made by the said Walter Wood, party hereto of the second part, or by his procurement or authority during that year."

The defendant acknowledged the validity of each and every of the letters patent, and agreed not to dispute or set up any defense against the validity thereof in any controversy arising out of the license.

It is admitted on both sides that the terms of the original contract, in the matters herein recited, were altered by subsequent oral agreements between the parties thereto and the controversy between them relates to the extent and scope of said alteration. The defendant contends that, shortly after the expiration of the first year in which the minimum royalty clause was operative, the president of the plaintiff corporation, being duly authorized in the premises, agreed with the defendant, who was one of the directors in said corporation, that since the 1st of October, 1893, and thereafter, he was to be charged at the uniform rate of $25 for every apparatus manufactured by or for him, instead of the larger sums stipulated for in the written contract, and that the agreement with reference to a minimum royalty, which was to go into effect on and after October 1, 1893, should be abrogated. That the consideration for this alteration and modification of the original agreement, was the fact that the patents covered by the contract were being constantly infringed, and that the plaintiff corporation had failed, or was unable, to protect them. The plaintiff corporation, on the other hand, contends, and so states in its declaration, that while the terms and conditions of the written contract were acted upon by the defendant until about the 15th day of October, 1894, the said contract was then, by resolution of the board of directors of the plaintiff corporation, and with the consent of defendant, altered and modified, so that the royalty and license fee to be paid by the defendant was reduced to the uniform sum of $25 for each producer made, sold or used by said defendant, but that the stipulation in regard to a minimum royalty remained in force, under which stipulation the defendant was bound to pay said royalty upon 100 producers or furnaces during each calendar year, whether manufactured, sold or used by him, or not.

Upon this view of the contract, as modified, suit has been brought, on which a claim of $10,000 is made for the minimum royalty during the years of 1898, 1899, 1900 and 1901. During this period, the inference is justified, that no producer had been made or sold by the defendant. Both sides agree that the contract as written had, by oral agreement and understanding, been altered and modified so as to substitute a uniform royalty of $25 on each producer manufactured or sold in lieu of the higher graded royalties prescribed in the original

contract, but they disagree as to there being any alteration or abroga-
tion of the minimum royalty clause of the contract. This was the
principal question in controversy at the trial, upon which evidence
was adduced on both sides. The jury found a verdict for the defend-
ant, whereupon a motion was made for judgment for plaintiff, non
obstante veredicto, "in accordance with the stipulation entered into by
and between the counsel for the respective parties during the trial of
this cause." This stipulation is as follows:

"It is hereby agreed between counsel for plaintiff and defendant that if the
court shall upon a review of the entire evidence produced on the trial held
November 13, 1902, be of opinion there is not sufficient evidence to submit to
the jury the question as to whether or not the cause of the contract in suit
relative to the minimum amount of royalties to be paid has been abrogated
or waived by agreement of the parties, express or implied, that then the
verdict, if for the defendant, is to be changed to a verdict for the plaintiff
for the amount claimed as if upon an instructed verdict to the jury to that
effect, reserving to each party the right to appeal or writ of error as to the
correctness of the ruling of the court on this and all other points in the case.
This stipulation is entered into in order to avoid difficulty on the question
of practice which forbids a judgment for plaintiff non obstante veredicto
despite a finding by the jury for the defendant."

This motion for judgment was refused by the court below, and the
single question presented upon this writ of error is, was there suf-
ficient evidence to justify a submission to the jury of the question,
whether or not there was a binding agreement to abrogate the mini-
mum royalty clause of the contract in suit? The plaintiff in error
makes two main contentions as to this question. First, that there
was no sufficient evidence of such an agreement in regard to the
minimum royalty; and second, that, if such an agreement were made,
no consideration sufficient in law to support it has been shown. All
the evidence in the case is embraced in the testimony of two wit-
nesses,—William J. Taylor, president of the corporation plaintiff, and
Walter Wood, the defendant, and in the correspondence between
them, and in certain minutes of the plaintiff corporation.

The learned judge of the court below, in denying the motion of
plaintiff for judgment, non obstante veredicto, said:

"It is true that the minutes of the plaintiff corporation exhibit no resolu-
tion of its board of directors, or of its stockholders, directly and in express
terms making the agreement in question, but it does not necessarily follow
that it was not in fact made, and in such manner as to bind the company.
The Court of Appeals for this Circuit, in Salem Iron Co. v. Lake Superior
Consol. Iron Mines, 112 Fed. 241, 50 C. C. A. 216, said: 'Undoubtedly the
board of directors is generally the governing and controlling body of a cor-
poration. Its policy and conduct within the scope of the purpose of its crea-
tion is in the absolute control of such directors. It cannot incur obligations
without the consent of such board, or generally without its express authority;
but the board of directors can exercise its plenary power by delegating its
authority as to certain transactions or classes of transactions to its president
or other executive officers, as well as by direct authorization of a particular
transaction by express resolution to that effect. A corporation is an intelli-
gent, though artificial person; and, while its board of directors is its con-
trolling mind, it may be bound, like a natural person, by a consent implied
by law from a course of conduct permitted and recognized by its governing
body.' These observations are pertinent to the present case."

The first year during which the minimum royalty clause would
have been operative, ended October 15, 1894. On April 25, 1895, at

a meeting of the directors of the plaintiff corporation, the president of the company reported as follows:

"The question of the validity of the Taylor producer patent is still unsettled, and considerable infringement is still going on."

—And the board of directors thereupon passed the following resolution:

"Messrs. E. B. Coxe, W. J. Taylor, and Walter Wood were appointed a committee for the prosecution of the parties infringing the patents owned or controlled by the company. This committee was also instructed to consider amendments to the contract with R. D. Wood & Co., the terms of which to be held in abeyance owing to the doubt surrounding the patents, and to be modified as may be agreed upon subsequently between the committee and the licensees of the company under the said patents."

Mr. Coxe, a member of this committee, died soon after his appointment, and the subsequent negotiations, pursuant to the authority of the resolution, were carried on between Taylor, the president of the company, and Wood, the defendant. Mr. Wood testifies to the conversations between Taylor and himself, and says:—"It was distinctly understood, and also said by Mr. Taylor, the president of the company, that the question of a minimum royalty was wiped out and ceased." He also testifies that he paid the royalties upon machines actually made by him during the years 1895, 1896, and 1897. The failure of the company to restrain infringement of the patent, seems to have been the chief cause of the dissatisfaction on the part of the defendant, and a confessed inability to maintain the validity, and therefore the value of the patents seems to have been the consideration operating upon those in control of the plaintiff company, to influence them in modifying the terms of the written contract. The defendant's testimony is corroborated by the evidence relating to the conduct of the parties. There is no evidence of any attempt on the part of the company to collect, or even claim, the minimum royalty stipulated for in the original contract until the bringing of the suit in 1902. A considerable correspondence took place in regard to the sums due for royalties at different times, but no allusion is made therein to the minimum royalty, although reference is made in the course of said correspondence, by the plaintiff corporation, to payments in full of all royalties due, which would have been untrue and absurd if there was believed by plaintiff to exist any just claim under the minimum royalty clause. A course of conduct continuously carried on through a period of six years or more, which supports, or is entirely consistent with, the direct testimony of the defendant, that the minimum royalty clause had been abrogated by mutual agreement between himself and Mr. Taylor, president of the corporation, was an important fact for the consideration of the jury, in connection with that testimony. On November 26, 1900, after this course of conduct had been continuously carried on for more than five years, the president reported to the board that the instructions of the board at the last meeting, held October 9, 1896, had "all been practically carried out; that is to say, the royalties for the producers sold in 1895 by the licensees, were lowered to $25 each and settlement made accordingly; and that Mr. Wood accepted the board's proposition to continue to manufacture

the producers, and paid the royalties for the calendar years 1896 and 1897—namely, 19 producers, $25 each, $475."

If the plaintiff's contention be correct, and the agreement for the payment of a minimum royalty was still in force, the royalties paid by Mr. Wood for the years 1896 and 1897 should have been $5,000 instead of $475, which is stated to have been the amount due according to the modified agreement. It must be recollected, also, that for the purposes of this case, the truth of defendant's testimony and all inferences favorable to the defendant which the jury might logically draw from the plaintiff's admissions, or from the minutes, correspondence and conduct of the parties, must be assumed.

The question of consideration must be viewed from the standpoint of the parties at the time the modification of the contract was suggested. In the statement made by the president of the company, as shown by the minutes of October 9, 1895, he speaks of the "unsatisfactory protection the patents afford." Afterwards, in correspondence between the parties, it appears that the president of the plaintiff company had concluded not to further prosecute infringements or defend the validity of the patent, on account of the great expense to be incurred and the doubtful issue of suits to sustain the patents. That the defendant had ground for objecting to be longer bound by the more onerous features of his contract, seems to have been clearly admitted by the action of the board of directors and the president of the company in the premises. The most onerous feature of the contract undoubtedly was the stipulation that, after three years, defendant should pay the royalties on 100 machines, whether manufactured by him or not, and if the jury believed the testimony of the defendant, that this minimum royalty clause had been abrogated by agreement with the president of the company, acting under the authorization of the board of directors, as set forth in its resolution of April 25, 1895, then they were also justified in believing that the defendant was led to relinquish efforts to manufacture under these patents of doubtful validity, by the understanding he testifies to having had with the plaintiff, and that in consequence of that understanding, he put himself in a position in which he would not have put himself, had that clause in the contract been still binding.

We think, on the whole, there was a sufficient consideration to support the modification of the contract, testified to by the defendant, and acted upon by him, and that, whether there was an agreement to so modify the contract, was a question of fact properly submitted to the jury upon the evidence.

The judgment of the court below is therefore affirmed.